[828 NE2d 599, 795 NYS2d 497]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DEREK
ANDRADES, Appellant.

Argued February 8, 2005; decided March 29, 2005

## POINTS OF COUNSEL

*Center for Appellate Litigation,* New York City (*Jan Hoth* and *Robert S. Dean* of counsel), for appellant. I. Appellant was denied his due process right to a fair hearing, the effective assistance of counsel, and his right to be present, where counsel advised the hearing court (and factfinder), before appellant testified and in his absence, that appellant might commit perjury at the *Huntley* hearing. (*People v DePallo,* 96 NY2d 437; *Nix v Whiteside,* 475 US 157; *People v Salquerro,* 107 Misc 2d 155, 92 AD2d 1091; *Lowery v Cardwell,* 575 F2d 727; *People v Moreno,* 70 NY2d 403; *People v Arthur,* 22 NY2d 325; *People v Williams,* 85 NY2d 945; *People v Roman,* 88 NY2d 18; *People v Spotford,* 85 NY2d 593; *Snyder v Massachusetts,* 291 US 97.) II. Appellant's waiver of counsel was invalid where the court failed to conduct an additional inquiry after it learned that appellant's desire to proceed pro se was influenced by his mistaken belief that he would be permitted to try the case in a manner that counsel could not. (*Faretta v California,* 422 US 806; *People v Arroyo,* 98 NY2d 101; *People v Rosen,* 81 NY2d 237; *People v. Reason,* 37 NY2d 351; *Adams v United States ex rel. McCann,* 317 US 269; *People v McIntyre,* 36 NY2d 10; *Johnson v Zerbst,* 304 US 458; *Hacker v Herbert,* 825 F Supp 1143; *People v Smith,* 92 NY2d 516; *People v Kaltenbach,* 60 NY2d 797.)

*Robert T. Johnson, District Attorney,* Bronx (*Nancy D. Killian* and *Joseph N. Ferdenzi* of counsel), for respondent. I. Defendant's guilt was proven beyond a reasonable doubt by overwhelming evidence. II. Trial counsel acted properly in disclosing to the court below his perceived "ethical dilemma." (*Strickland v Washington,* 466 US 668; *People v Baldi,* 54 NY2d 137; *People v Longtin,* 92 NY2d 640, 526 US 1114; *People v Ortiz,* 76 NY2d 652; *Nix v Whiteside,* 475 US 157; *People v Campos,* 249 AD2d 237; *Harris v New York,* 401 US 222; *People v Tyler,* 245 AD2d 1100, 91 NY2d 978; *People v Diaz,* 199 AD2d 182, 83 NY2d 804; *People v Appel,* 120 AD2d 319, 69 NY2d 824.) III. The trial court properly permitted defendant to proceed pro se, with counsel acting as legal advisor, after engaging defendant in a lengthy inquiry. (*People v Brown,* 45 NY2d 852; *People v Brown,* 258 AD2d 354, 93 NY2d 1001; *People v Arroyo,* 98 NY2d 101; *People v McIntyre,* 36 NY2d 10; *Faretta v California,* 422 US 806; *People v Slaughter,* 78 NY2d 485; *People v Vivenzio,* 62 NY2d 775; *People v Smith,* 92 NY2d 516; *People v Henriquez,* 3 NY3d 210.)

**OPINION OF THE COURT**

G.B. SMITH, J.

In *People v DePallo* (96 NY2d 437 [2001]), we held that defense counsel properly balanced the duties he owed to his client and the duties he owed to the court and to the criminal justice system when, during a jury trial, counsel notified the court that his client had offered perjured testimony and refused to use that testimony in his closing argument to the jury. We left open the question of the propriety of a similar disclosure under circumstances where the court sits as the factfinder. We address that issue in the case now before us and hold that counsel's disclosure to the court, which was open to the inference that his client intended to perjure himself upon taking the stand, did not deprive defendant of a fair hearing or of the effective assistance of counsel.

Defendant became enraged when he heard rumors that Magalie Nieves, a woman with whom he had had a sexual relationship, was infected with the HIV virus. Defendant, with the aid of 14-year-old Ericka Cruz, confronted Nieves and a fight ensued. Subsequently, defendant and Cruz lured Nieves to an isolated area where defendant choked her with a bandana, and he and Cruz stabbed her in the ear and in the breast, killing her. Days later, the police arrested Cruz, who offered a confession of the killing. The next day, defendant was arrested and charged, inter alia, with second degree murder and first degree

manslaughter. Upon his arrest, defendant was read his *Miranda* rights and gave both written and videotaped statements in which he admitted to acting in concert with Cruz in killing Nieves.

Defendant moved to suppress his confessions, and the trial court ordered a *Huntley* hearing. Prior to the hearing, defendant's attorney asked to be relieved as counsel stating, "There is an ethical conflict with my continuing to represent [defendant] and I can't go any further than that." The prosecutor opposed the application, citing the age of the case. The court asked defense counsel to state the nature of the ethical dilemma without disclosing privileged information so that the court could make an effective ruling. Counsel stated, however, that he could not elaborate. The court then presumed that counsel's ethical dilemma concerned defendant's right to testify. The court denied counsel's application and told him that if the problem arose, he would have to offer more specific information to the court.

After the People presented their case at the *Huntley* hearing, defense counsel informed the court that defendant intended to testify. Outside defendant's presence, counsel stated:

> "As part and parcel of my request to be relieved in this matter, I think I should tell the Court and place on the record that I did tell [defendant] and advise [defendant] that he should not testify at the hearing and as a result of the problem that I'm having, the ethical problem I'm having. What I'm going to do is just basically direct his attention to date, time and location of the statement and let him run with the ball."

The court, recognizing that defense counsel was not permitted to divulge privileged matters to the court, concluded that counsel's conduct complied with his ethical obligations under the disciplinary rules given his anticipation that defendant "could possibly, could commit perjury on the witness stand." The court further concluded that counsel could still afford defendant the effective assistance of counsel.[1]

Defendant thereafter testified on his own behalf, largely in narrative form, with the court and counsel asking clarifying questions. Defendant testified that at the time he provided his

---

1. The court also concluded that it was not necessary for defendant to be present during the conference because it did not constitute a critical stage of his trial.

statements to the police, he did not remember the events leading to Nieves's death and specifically did not recall stabbing her. He stated that during his interrogation, the police informed him of Cruz's version of the events, and he believed what she said because he did not think that Cruz would lie about him. Defendant stated that he initially refused to sign the written confession drafted by the police officers because its contents were not true, but that later he signed it only after one of the officers took him into a private room. Defendant further testified that when he gave his videotaped statement, he simply restated Cruz's rendition of the killing as described to him by the officers. Thus, he claimed that this confession was not a recounting of events from his own memory. Finally, defendant stated that by the time he had provided the videotaped confession at approximately 10:00 P.M., he was hungry because he had not eaten all day, and was not permitted food until after he had given that statement.

Defense counsel offered no closing argument, choosing instead to rest on the record and the papers submitted. Following the People's closing statement, the court denied defendant's motion to suppress his confessions. In a subsequent written decision, the court noted that it "did not find the defendant's testimony credible or worthy of belief." The court held that defendant made his written and videotaped statements after voluntarily waiving his constitutional rights.

Upon a jury trial, at which defendant largely defended himself, defendant was convicted of second degree murder and sentenced to a prison term of 25 years to life. The Appellate Division affirmed the conviction, holding that counsel's disclosure of an ethical dilemma and his decision to submit defendant's testimony in narrative form did not deprive defendant of his right to a fair hearing or to the effective assistance of counsel. The Court further held that defendant was not denied his constitutional right to be present at the material stages of his trial insofar as his presence was not required at the colloquy between the court and the attorneys concerning defense counsel's ethical dilemma regarding defendant's testimony. A Judge of this Court granted defendant leave to appeal and we now affirm the conviction.[2]

In *DePallo*, we recognized that a defense attorney's duty to zealously represent a client must be circumscribed by his or her

2. ■ We expressly reject defendant's claim that the trial court failed to conduct a sufficient inquiry into defendant's understanding of the perils of

duty as an officer of the court to serve the truth-seeking function of the justice system (96 NY2d at 441). Moreover, as perjury is a criminal offense, defense counsel has a duty to refrain from participating in the client's commission of it. Thus, we stated that while counsel must pursue all reasonable means to reach the objectives of the client, counsel must not in any way assist a client in presenting false evidence to the court (id.; Nix v Whiteside, 475 US 157, 166 [1986]).

Indeed, New York's Code of Professional Responsibility specifically addresses an attorney's ethical obligations in providing lawful representation. DR 7-102 (codified at 22 NYCRR 1200.33) expressly states that an attorney may not "[k]nowingly use perjured testimony or false evidence" (DR 7-102 [a] [4]); "[k]nowingly make a false statement of law or fact" (DR 7-102 [a] [5]); "[p]articipate in the creation or preservation of evidence when the lawyer knows or it is obvious that the evidence is false" (DR 7-102 [a] [6]); "[c]ounsel or assist the client in conduct that the lawyer knows to be illegal or fraudulent" (DR 7-102 [a] [7]); or "[k]nowingly engage in other illegal conduct" (DR 7-102 [a] [8]).

In light of the ethical obligations of an attorney in this state, and in accordance with United States Supreme Court jurisprudence, an attorney faced with a client who intends to commit perjury has the initial responsibility to attempt to dissuade the client from pursuing the unlawful course of action (see Nix v Whiteside, 475 US at 169-170; People v DePallo, 96 NY2d at 441). Should the client insist on perjuring himself, counsel may seek to withdraw from the case. If counsel's request is denied, defense counsel, bound to honor defendant's right to testify on his own behalf, should refrain from eliciting the testimony in traditional question-and-answer form and permit defendant to present his testimony in narrative form. However, in accordance with DR 7-102 (a) (4), counsel may not use the perjured testimony in making argument to the court.

Here, defense counsel properly discharged his ethical obligations under the circumstances presented. Counsel clearly advised defendant against lying on the witness stand; indeed,

---

self-representation. The record makes plain that the court engaged defendant in a two-hour colloquy and warned him against proceeding pro se. And given the court's repeated warnings that defendant would be held to the same rules of evidence as would his attorney, no further explanation was needed to address counsel's statement to the court that defendant believed that he could take certain actions that his attorney could not.

counsel encouraged defendant not to take the stand at all. Yet defendant insisted on testifying at the hearing, and his attorney believed that the evidence he intended to present was false. Thus, it was entirely proper for counsel to seek to withdraw as defendant's attorney prior to the hearing based on his perceived ethical dilemma.

While defendant does not argue the propriety of his attorney's actions up to that point, he does take issue with his attorney's telling the court that the ethical dilemma he faced concerned defendant's right to testify at the hearing. Defendant argues that such a disclosure signifies defendant's intention to commit perjury to the court which sits as the factfinder for the hearing. He contends that such a disclosure inevitably affected the court's ability to assess his credibility in determining the outcome of the hearing.[3] In that same vein, defendant argues that his attorney should not have told the court of his intent to question defendant in the narrative before having done so. Defendant asserts that his attorney should have said nothing, proceeded to question defendant in the narrative and if counsel's suspicions about defendant's testimony ripened into a reality, counsel could simply refrain from using the perjured testimony in his closing argument.

We disagree. As an initial matter, we note that at no time did counsel ever disclose to the court that defendant intended to commit perjury or otherwise disclose any client secrets. Rather the court inferred defendant's perjurious intent based upon the nature of counsel's application. However, counsel could have properly made such a disclosure since a client's intent to com-

---

3. In support of his position, defendant relies on *Lowery v Cardwell* (575 F2d 727 [9th Cir 1978]). In that case, defendant testified at her bench trial and perjured herself, to the surprise of her attorney. Counsel requested a recess, at which time, he unsuccessfully attempted to withdraw from the case. Counsel then ended the defendant's testimony and made no reference to the defendant's perjured testimony during his closing arguments. The United States Court of Appeals for the Ninth Circuit held that counsel's actions denied the defendant a fair trial because counsel's actions gave the judge the impression that counsel believed that the defendant had testified falsely. The court stated that by his actions, counsel placed himself in opposition to his client's interests (*see id.* at 730). The court suggested that it would have been the better practice for the attorney to have made a record for his own protection in the event that he was ever questioned about his professional conduct (*see id.* at 731 n 5). We expressly reject this approach because it requires an attorney to remain silent while the client commits perjury, which is wholly incompatible with counsel's role as an officer of the court and, more specifically, counsel's obligation to reveal fraud perpetrated by a client upon the court (*see* DR 7-102 [b] [1]; *see also Nix v Whiteside*, 475 US at 174).

mit a crime is not a protected confidence or secret (*see Nix v Whiteside*, 475 US at 174; *People v DePallo*, 96 NY2d at 442; Code of Professional Responsibility DR 4-101 [c] [3] [22 NYCRR 1200.19 (c) (3)]). Moreover, counsel's ethical obligations do not change simply because a judge rather than a jury is sitting as the factfinder. Moreover, as a practical matter, defendant's suggestion would solve nothing because counsel would likely find it difficult to allow defendant to testify in the narrative without prior explanation. Like the direct examination of any witness, defendant's examination must be guided by proper questioning. Had counsel attempted to offer defendant's testimony in the narrative, it would have been subject to objection either by the prosecutor or the court. Even if counsel were permitted to present defendant's testimony in narrative form without objection, the very fact of defendant testifying in such a manner would signify to the court that counsel believes that his client is perjuring himself.

We therefore conclude that defense counsel properly balanced his duties to his client with his duties to the court and the criminal justice system and that in doing so, defendant was not denied his right to a fair hearing. Furthermore, absent a breach of any recognized professional duty, defendant's claim that he was denied the effective assistance of counsel must also fail (*see People v DePallo*, 96 NY2d at 442-443, citing *Nix v Whiteside*, 475 US at 175; *People v Baldi*, 54 NY2d 137, 151-152 [1981]).

Finally, we reject defendant's contention that he was denied his right to be present during a material stage of the trial because he was absent during the colloquy between the court and the attorneys regarding defense counsel's intent to present defendant's testimony in the narrative. As we stated in *DePallo* (96 NY2d at 443) and in *People v Keen* (94 NY2d 533, 539 [2000]), a colloquy of this nature involves procedural matters at which a defendant can offer no meaningful input. Therefore, defendant had no right to be present.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge KAYE and Judges CIPARICK, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

Order affirmed.